## Skobel v. PennDOT

*Richard Thornburg,* for plaintiff.
*Francis P. Bach, assistant counsel,* for PennDOT.

RUBRIGHT, *J.,* April 15, 1992—This matter is presently before the court on the plaintiff's (Skobel) appeal from a suspension of his operating privileges for a period of one year due to his refusal to submit to a chemical test to determine the alcohol content of his blood. A hearing was held and we are now prepared to dispose of the matter.

The relevant facts presented at the hearing are as follows:

On December 19, 1991, at approximately 2:20 a.m. Skobel was arrested in Exeter Township, Berks County, for driving under the influence of alcohol. He was advised of the implied consent law and was asked if he would submit to a blood test to determine the alcohol content of his blood. Skobel agreed to submit to the test. While he was being transported to St. Joseph's Hospital in Reading, he insisted that he be allowed to call a friend although

he was advised that he had no right to make any telephone calls before blood was drawn. When Skobel and the arresting officer arrived at the hospital, Skobel said he had to use the restroom, and he was accompanied there by the officer. They returned to the room where blood was to be drawn. When a nurse attempted to put an identity bracelet on Skobel's wrist he again requested to make a telephone call. He was again told that had no right to make a call until after blood was drawn. Skobel then said he was going to be sick and the officer took him outside. During the ten minutes they were outside, Skobel played with the automatic doors and repeated his request to make a phone call but he did not get sick. Skobel and the officer went back into the hospital and the nurse again attempted to put the identity bracelet on Skobel's wrist. Skobel refused to allow that and, once again, requested to make a phone call. He was asked by the officer if he was going to allow blood to be drawn and he did not answer. At that point, the officer deemed Skobel's conduct to be a refusal to submit to a blood test and he told him he was going to take him to the police station. Skobel became belligerent and had to be subdued. He was taken to the police station and the arresting officer gave him one last chance to submit to the blood test by asking him if he wanted to "start over." Skobel responded only by saying that he wanted to call his attorney. He was advised for the final time that he had no right to speak to an attorney before submitting to a blood test.

In license suspension cases under section 1547(b) of the Vehicle Code, 75 Pa.C.S §1547(b), the Commonwealth must establish that the driver involved: (1) was arrested for driving under the influence; (2) was asked to submit to a chemical test; (3) refused to do so; and (4) was

specifically warned that a refusal would result in the suspension of his driver's license. *Everhart v. Commonwealth,* 54 Pa. Commw. 22, 420 A.2d 13 (1980). The parties have stipulated to the first two elements. The only issues which remain are whether Skobel was advised of the consequences of a refusal and whether he did, in fact, refuse.

The first issue is easily addressed. The arresting officer testified unequivocally that he advised Skobel of the consequences of a refusal when he requested him to submit to a blood test at the scene of the arrest. Skobel's testimony did not contradict that assertion. Therefore, we find that the Commonwealth has met its burden on that issue.

The remaining issue is not quite as simple. The arresting officer testified that Skobel agreed at the scene of the arrest to submit to a blood test. However, when they arrived at the hospital, Skobel became uncooperative and found innumerable excuses to delay the drawing of blood. He had to use the restroom; he wanted to make a phone call; he was going to be sick; and he did not want to wear the identity bracelet. After the nurse's second attempt to put the bracelet on Skobel's wrist was thwarted, the arresting officer asked Skobel if he was going to give blood and Skobel did not answer. At that point, the officer determined that Skobel was refusing to submit to a blood test. He took Skobel to the police station but, once there, gave him one last chance to submit to a blood test. Skobel's response was another request to call his attorney. A refusal was recorded.

It is well-settled that anything substantially less than an unqualified, unequivocal assent to take a chemical

test amounts to a refusal under section 1547(b) of the Vehicle Code. *Hando v. Commonwealth,* 84 Pa. Commw. 63, 478 A.2d 932 (1984). A refusal to take a chemical test need not be expressed in words, but can be implied from a licensee's actions. *Marmo v. PennDOT, reconsideration,* 121 Pa. Commw. 191, 550 A.2d 607 (1988). Further, any delay tactics on the part of the licensee need not be tolerated by the police and can constitute a refusal. *Id.*

Based upon the case law cited, we have little trouble concluding that Skobel's conduct at the hospital, with the various delay tactics and repeated requests to make telephone calls, as well as his failure to answer when asked if he was going to allow blood to be drawn, constituted a refusal. However, our analysis cannot end there because it has also been held that where a police officer gratuitously offers a licensee a subsequent opportunity to take a chemical test, after a prior refusal, the prior refusal is waived. *Marmo, supra.* In the instant case, the arresting officer testified that, after he had returned to the police station with Skobel, he asked Skobel if he wanted to "start over" meaning did he want to take a blood test. We must conclude that the gratuitous offer by the arresting officer constitutes a waiver of the prior refusal. Therefore, any refusal under section 1547(b) would have had to occur after the waiver of the prior refusal. We find that such a refusal did occur because Skobel's only response to the officer's question was a request to call his attorney. Skobel had been told repeatedly that he had no right to call anyone until after he submitted to the blood test. There was no evidence that Skobel may have been confused as to his right to

counsel and, therefore, *PennDOT v. O'Connell,* 521 Pa. 242, 555 A.2d 873 (1989), and its progeny are not applicable here. Based upon the circumstances presented, we find that Skobel's request to call his attorney constituted a refusal.

In accordance with the foregoing, we enter the following

## ORDER OF COURT

And now, April 15, 1992, at 3 p.m. after hearing and careful consideration of the evidence, it is hereby ordered that the plaintiff's appeal from suspension of his operating privileges is denied and dismissed.